The document below is hereby signed.

Signed: September 30, 2010.



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ETHEL J. DAWSON, | ) | Case No. 04-00531 |
| | ) | (Chapter 13) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ETHEL J. DAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 04-10083 |
| JAMES B. THOMAS, _et al._, | ) | |
| | ) | **For Publication in West's** |
| Defendants. | ) | **Bankruptcy Reporter** |

MEMORANDUM DECISION RE PLAINTIFF'S MOTION
TO COMPEL COMPLIANCE WITH COURT ORDER OF APRIL 9, 2008

The instant adversary proceeding was commenced by the filing
of a five-count complaint on September 23, 2004, which sought,
_inter alia_, rescission of a loan extended by the defendant, James
Thomas, to the plaintiff, Ethel Dawson, as well as damages, based
upon violations of the Truth in Lending Act ("TILA").  More than
three years after this proceeding was commenced, the court ruled
that Thomas did, in fact, violate the Truth in Lending Act, and
that the plaintiff was entitled to both rescission and damages

with respect to finance charges paid.  *Dawson v. Thomas (In re Dawson)*, 411 B.R. 1 (Bankr. D.D.C. 2008).  Because the two remedies are largely duplicative, yet somewhat different in their mechanics, and in order to prevent a double recovery, the court's memorandum decision and interim order instructed the plaintiff to elect which of these remedies she intends to pursue.  This memorandum decision addresses developments in the case brought to the court's attention after the court issued its initial memorandum decision.

I

FACTS

On April 29, 2008, Thomas filed a status report contending that because Dawson "apparently sold" the real property securing the loan in question, she has waived any right of rescission (Dkt. No. 63).  According to the certificate of satisfaction attached to Thomas's status report, by August 30, 2006, Dawson had fully satisfied her loan obligation to Thomas.  On April 29, 2008, the same day on which Thomas filed his status report, the debtor filed a notice of election to rescind, advising the court that she sold her house on June 13, 2006, and further stating that approximately $50,000 was placed into escrow by the settlement company pending the resolution of this adversary proceeding (Dkt. No. 64).  The debtor likewise filed a statement of attorney fees, specifying that she wishes to have those fees

2

paid from the aforementioned escrow account.

On May 15, 2008, apparently surprised by Thomas's assertion that the loan had been satisfied from the proceeds of the sale, Dawson filed a Motion to Compel Compliance with Court Order of April 9, 2008 (Dkt. No. 66).  In that motion, Dawson explains that she believed that the sale proceeds were being held in escrow pending resolution of this adversary proceeding, and that she did not intend to waive any of her claims.  Dawson further states that, in response to Thomas's April 29, 2008 filing, she attempted to contact the settlement company, only to learn that the settlement company has apparently gone out of business and the attorney who conducted the settlement has apparently had his license revoked.  By her motion, Dawson asks that the court require Thomas to pay the $50,000 he received upon the sale of Dawson's property into the court's registry so that it may be distributed according to the court's April 9, 2008 order.

Thomas opposes Dawson's motion to compel on several grounds. First, Thomas contends that he is already in compliance with the order, observing that the April 9, 2008 order did not require segregation of funds.  Second, Thomas notes that, in consultation with Dawson's son, Thomas discounted the pay off amount of the note by approximately 15% and, upon satisfaction of that reduced amount through the sale proceeds, Thomas ultimately recorded a release of the deed of trust.  Thomas contends that this

3

constituted a settlement of the dispute, although he acknowledges
that Dawson refused to sign a release of her claims in this
proceeding in exchange for a release of the deed of trust.
Third, Thomas contends that there was no agreement among Thomas,
Dawson, and/or the settlement agent that would require the funds
used to pay off the note to be escrowed pending resolution of
this proceeding.  Likewise, there was nothing in this court's
April 9, 2008 order that would have required Thomas to pay any
money into the court's registry.  As such, Thomas states that he
is in compliance with the court's order and the requested relief
is inappropriate.  Finally, Thomas contends that because the
property was sold and the deed of trust released, there is
nothing left to rescind.  As an additional matter, and of unclear
legal significance, Thomas takes issue with Dawson's failure to
disclose that the sale of the property was to Dawson's son.

II

SURVIVAL OF DAWSON'S RESCISSION RIGHTS
DESPITE THE SALE OF THE SUBJECT PROPERTY

Section 1635(f) of 15 U.S.C. provides that "[a]n obligor's
right of rescission shall expire three years after the date of
consummation of the transaction or upon the sale of the property,
whichever occurs first . . . ."  Relying on this language, Thomas
contends that Dawson's sale of her property has extinguished her
right to invoke TILA's rescission remedy in this proceeding.  As
explained in more detail below, the court concludes that Dawson

4

timely exercised her right to rescission by the filing and
prosecution of this adversary proceeding, and she did not waive
or extinguish that right by selling her house prior to the
court's issuing a decision.  Furthermore, because Dawson's right
to damages survives regardless of whether her right to rescission
has expired under § 1635, the issue is largely - if not entirely
- academic.[1]

    As noted in the court's memorandum decision, "Dawson's right
to rescission was subject to legitimate dispute in this
litigation, and Thomas was under no obligation to honor Dawson's
request until this court determined that Dawson actually
possessed a right of rescission." *Dawson v. Thomas*, 411 B.R. at
41.  As the court also noted, however, by insisting upon judicial
resolution of whether he violated TILA, Thomas engendered delay.
*Dawson v. Thomas*, 411 B.R. at 43.  To strip Dawson of the right
to rescind after she duly sought to vindicate that right in this
adversary proceeding, and when it was Thomas whose challenge to
that asserted right necessitated a trial before this court, would

---

[1]  Although Thomas makes the unsupported contention that the
satisfaction of the loan incident to the sale constituted a
settlement of this entire adversary proceeding, he does not
allege - as he does with rescission pursuant to § 1635 - that
Dawson's sale of the property extinguished her right to pursue
affirmative relief under the damages provisions of TILA.  Indeed,
although the language of the statute allows for a colorable
argument that Dawson's right to rescission terminated upon the
sale, no comparable argument is available with respect to the
damages remedy.

be an anomalous result.  As a practical matter, however, because

the remedy of damages under TILA provides monetary relief equal

to that provided for under rescission,[2] and given that Thomas has

already released the deed of trust, it arguably would be

unnecessary for the court to even reach the issue of whether

rescission is still an available remedy.[3]  Nevertheless,

rescission is an equitable remedy, restoring the parties to the

---

[2]  Although the court's order provided that Dawson could
elect to off set amounts that would be owed to Thomas against the
fees and finance charges owed by Thomas to Dawson, by paying
Thomas in full, Dawson has waived any right to setoff.  In short,
there is nothing to set off against, and the court will not
require Thomas to remit the proceeds he received incident to the
sale into an escrow account merely to vindicate a right to setoff
that the debtor has waived.

[3]  Thomas is correct that, on the current record, there is
no basis for requiring that he pay $50,000.00 into the court's
registry.  Had the court been advised of the sale in a timely
manner, and had the debtor so requested, the court could have
fashioned an appropriate remedy to address the distribution of
sale proceeds incident to a sale.  *See, e.g., Semar v. Platte
Valley Federal S&L Ass'n,* 791 F.2d 699, 702 (9th Cir. 1986)
(District Court placed proceeds of sale into escrow when property
at issue was sold after TILA claim filed but before litigation
was concluded).  Dawson having instead elected to remain silent,
there is currently no judgment outstanding requiring the sale
proceeds to be placed into escrow.  This does not preclude Dawson
from pursuing in a supplemental complaint enforcement of any
agreement that required Thomas to place the $50,000.00 into
escrow pending a determination of how that $50,000.00 should be
distributed.  As a practical matter, however, if the amount of
principal that was owed to Thomas (and unquestionably a sum to
which he is entitled) and that was paid via the $50,000 payment
can be readily ascertained, the finance charges and fees
recoverable by Dawson should be readily fixed as well.  In that
event, it might make more sense simply to seek a rescission
decree (or monetary judgment) for recovery of the finance charges
and fees.

status quo, with the obligor no longer being liable under §
1635(b) "for any finance or other charge," and the court can
enter an injunction in framing a rescission remedy that compels
Thomas to refund to Dawson all finance charges paid.  That remedy
may be more readily enforced than a monetary judgment.

Several courts have considered the question of whether and
under what circumstances a borrower's sale of her property
terminates her right to rescission under 15 U.S.C. § 1635(f).
The cases, however, provide only limited guidance as to the
circumstances under which a sale definitively terminates the
right to rescind in the event the borrower has made at least some
attempt to rescind prior to the sale.  At least one court
concluded that, in order to preserve the right to rescind
notwithstanding § 1635, the borrower was required, at the very
least, to send notice of rescission before contracting to sell
her home.  *See Hefferman v. Bitton*, 882 F.2d 379, 383-84 (9th
Cir. 1989) (declining to reach the more difficult question of
whether a "sale" under § 1635(f) establishes a deadline for
sending a notice or for bringing a lawsuit); *Blough v. Young*,
1998 WL 1993382 (Mich. App. Jan. 23, 1998) (unpublished)
(following *Bitton* and holding that the right to rescission
terminated when the borrower contracted to sell the property).
In *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899 (9th Cir. 2003),
the court expanded upon the holding in *Bitton*, concluding that a

sale of the property, even if it occurs after the borrower sends
a notice of rescission and after the borrower commences
litigation seeking to vindicate the right, terminates rescission
as a cause of action. *Id.* at 902-03 (borrowers amended their
complaint after the sale in order to seek damages rather than
rescission under TILA, and their claim was ultimately dismissed
because the one-year limitation on the damages claim had
expired). *But see Semar v. Platte Valley Fed. S & L Ass'n*, 791
F.2d 699 (9th Cir. 1986) (permitting the borrower to continue
prosecution of a TILA rescission claim notwithstanding a post-
complaint sale of the property, requiring that the proceeds of
the sale be held by the court in escrow, but failing to reach the
question of when a sale or a contract of sale would terminate the
right to rescission under § 1635).  The court has found no case
in which the borrower at issue fully prosecuted her rescission
claim at trial, yet sold the property prior to the court's
issuing a decision.

To the extent cases such as *Meyer* interpret § 1635(f) to
mean that, regardless of what steps a borrower takes to invoke
his right to rescission, that right always terminates once the
borrower contracts to sell his home, this court respectfully
disagrees.  Section 1635 ought not be understood as providing for
termination of the borrower's entitlements arising from
rescission when a sale occurs *after* that right of rescission has

8

been properly exercised and preserved through the timely
commencement of an action to enforce the right.

In other words, if a borrower has given timely notice of
rescission and sued to enforce that right prior to the expiration
of three years without having sold the property, the right of
rescission has been **exercised**, and does not later expire after
three years have passed or the property is sold.  This conclusion
follows from reading § 1635(f) in the context of paragraphs (a)
and (b) of § 1635, and from examining the title of § 1635(f).
The manner in which the right to rescind is **exercised** is set
forth in § 1635(a), which provides that "the obligor shall have
the right to rescind the transaction . . . by notifying the
creditor, in accordance with regulations of the Board of his
intention to do so."  In turn, as noted in *Beach v. Ocwen
Federal Bank*, 523 U.S. 410, 412-13 (1998), § 1635(b) provides
that "[w]hen an obligor **exercises** his right to rescind under
subsection (a), he is not liable for any finance or other charge,
and any security interest given by the obligor . . . becomes void
upon such a rescission" (emphasis added), and provides that the
lender's receipt of such notice triggers the lender's obligation
within 20 days to return to the obligor any money given as a
downpayment.  Accordingly, timely **exercise** of the right of
rescission, and timely commencement of an action to enforce that
right if the lender does not comply with its rescission

9

obligations triggered by that exercise of the right of
rescission, are all that are necessary to preserve the borrower's
entitlements arising from rescission, including the right to a
return of any downpayment.  When the rights arising from
rescission has been preserved in that fashion, neither the
subsequent passage of three years after the consummation of the
loan transaction nor a subsequent sale of the property terminates
those rescission rights.  Finally, as the icing on the cake,
§ 1635(f) itself is entitled "Time limit for **exercise** of right."
(Emphasis added.)  That title eliminates any ambiguity that
§ 1635(f) might have were its text read in isolation from the
other provisions of § 1635.  The title to § 1635(f), and
paragraphs (a) and (b) of § 1635, demonstrate that § 1635(f)
addresses only the time for **exercise** of the right of rescission.
*Meyer* failed to acknowledge this logical conclusion arising from
examining § 1635 as a whole and the title of § 1635(f) itself.

Furthermore, treating a timely exercised right of rescission
as terminated by a subsequent sale would deprive the borrower of
its right to recover damages for the lender's failure to comply
with its rescission obligations.  A timely exercise of the right
of rescission triggers obligations on the lender's part, and if
the lender wrongfully fails to comply with those rescission
obligations, the borrower may sue for damages based on that
breach.  *See Mount v. LaSalle Bank Lake View*, 886 F. Supp. 650,

10

651-52 (N.D. Ill. 1995); *Malfa v. Household Bank, F.S.B.*, 825
F.Supp. 1018, 1020 (S.D. Fla. 1993). Treating a subsequent sale
as terminating a timely exercised rescission right, thereby
eliminating the right to recover damages for breach of the
lender's rescission obligations arising from the timely exercise
of rescission, only awards the lender for dragging its heels.

Under the *Meyer* interpretation of § 1635, Dawson's right to
rescind would have expired while this matter was under advisement
regardless of any sale, given that § 1635 provides that the right
expires "three years after the date of consummation of the
transaction or upon the sale of the property, whichever occurs
first . . . . ," and it has been more than three years since the
consummation of the transaction. That would be an absurd result,
and it stands to reason that if the passage of three years did
not terminate Dawson's rescission rights in this case, neither
did her sale of the property.

The Court's decision in *Beach v. Ocwen Federal Bank*, 523
U.S. 410 (1998), demonstrates that the passage of three years
does not terminate the right of rescission if, within that three
years, the right has been properly invoked and preserved through
the commencement and prosecution of a claim. In *Beach*, the Court
held that § 1635(f) is a statute of repose, not merely a statute
of limitation, and thus that when a borrower failed within three
years of the consummation of the loan transaction to give notice

11

of rescission, the rights of rescission could not later be
asserted defensively by way of recoupment.  The Court noted that
"[t]he terms of a typical statute of limitation provide that a
cause of action may or must be brought within a certain period of
time," but that "Section 1635(f) ... takes us beyond any question
whether it limits more than the time for bringing a suit, by
governing the life of the underlying right as well." *Id.* at
416-17.  As noted already, however, *Beach* acknowledged that under
§ 1635(b), if a right of rescission *is* timely exercised (by
giving proper notice to the lender), that automatically voids the
lender's security interest and obligates the lender to return any
downpayment.  The lender's rescission obligations are
automatically triggered upon timely exercise of the rescission
right.  When the lender fails to comply with those obligations,
and the borrower timely sues to enforce his rescission rights,
those rights are not subject to loss at a subsequent date by
reason of the passage of three years or, it logically follows, by
reason of a sale of the property.

If the obligor sues to enforce an exercised rescission
right, the procedures prescribed by § 1635(b) apply "except when
otherwise ordered by a court."  Accordingly, when timely notice
of rescission has been made under § 1635(a), but the lender
questions whether the obligor was entitled to rescind, forcing
the obligor to sue to enforce the rescission, the court may alter

12

the procedures under § 1635(b). But a necessity to seek court enforcement, and the court's authority to modify the rescission procedures when such court enforcement is sought, do not destroy the timeliness of the exercise of the right of rescission. Indeed, the court's authority to modify the procedures under § 1635(b) is evidence that the court possesses the discretion to frame a rescission remedy that takes into account the effects of a sale of the property that occurs after the timely filing of a complaint for rescission. For example, when the borrower proceeds to sell the property, the court can still order that the lender is obligated to return any downpayment (part of the rescission obligations to which the lender is subject under § 1635(b)), even though voiding the security interest may be a moot issue. There is no reason why, after the borrower timely exercises his right of rescission, a subsequent sale should obliterate all of the lender's obligations arising from the rescission. At most, the sale language in § 1635(f) can be viewed as setting forth a condition precedent (no prior sale) for exercising and, perhaps, for suing on the right of rescission.[4] Dawson met that condition precedent.

---

[4] Rescission obligations of the lender being automatically triggered upon receipt of a timely notice of rescission, the borrower arguably does not lose his rescission rights by reason of selling the property prior to the commencement of an action to enforce those rescission rights. This case, however, does not present that issue.

13

The Court in *Beach*, 523 U.S. at 418-19, offered an explanation for why Congress might have decided to make § 1635(f) a statute of repose instead of only a statute of limitations for asserting rescission claims (in contrast to the different treatment of damage claims under TILA):

> Since a statutory right of rescission could cloud a bank's title on foreclosure, Congress may well have chosen to circumscribe that risk, while permitting recoupment damages regardless of the date a collection action may be brought. See Board of Governors of Federal Reserve System, Annual Report to Congress on Truth in Lending for the Year 1971, p. 19 (Jan. 3, 1972); National Commission on Consumer Finance, Consumer Credit in the United States 189-190 (Dec. 1972).

This makes sense.  In a foreclosure sale context, a mortgage that remains subject to rescission could result in a cloud on the purchaser's title.  Section 1635(f) provides assurances that the bank can sell the property at foreclosure without there being a risk of rescission clouding the purchaser's title, a risk that could depress the amount that might be bid at the foreclosure sale.  As noted in the reports cited in *Beach*, this ultimately can hurt borrowers (because they will be liable for any deficiency arising at a foreclosure sale).[5]  Once, however, the

---

[5]    If a borrower makes a voluntary sale of property and pays off the lender, no cloud on title would arise from a continued existence of a right of rescission, but § 1635(f) still serves a purpose by terminating the right of rescission.  That gives the lender assurances that it may treat the loan transaction as not subject to rescission (unless the right was exercised before the sale), and that it may treat itself as no longer under a necessity to retain records pertaining to any potential assertion of a right of rescission.

borrower has timely exercised his right of rescission, the bank
proceeds at its own risk in holding a foreclosure sale for which
the sale proceeds may be depressed by reason of the borrower's
timely exercised rescission rights.  Similarly, if after timely
exercising his right of rescission, the borrower voluntarily
sells the property, the lender remains on notice that rescission
is *not* at an end (by reason of rescission having been exercised
within the time limits of § 1635(f)).

In *Bitton*, 882 F.2d at 384, the court of appeals reasoned:

> Congress probably enacted § 1635(f) because it worried
> that allowing a consumer to rescind after selling his
> residence would cloud property titles and inhibit
> transactions.  See Federal Reserve Board, Annual Report
> to Congress on Truth in Lending for the Year 1972,
> reprinted in 119 Cong.Rec. 4596, 4597 (1983) (discussing
> the policies behind § 1635(f)).  Terminating the right to
> rescind when the consumer irrevocably agrees to sell his
> property fulfills this policy better than terminating the
> right upon the actual conveyance.  Allowing consumers to
> rescind or attempt to rescind after entering such a
> contract implicates the rights of the purchaser and his
> financing agency and could produce needless litigation
> and other difficulties.  Although Hefferman may have
> concealed the attempted rescission from the Malcolms, or
> informed them of her intentions but assuaged their doubts
> by paying the lenders in full at the conveyance, some
> sellers might attempt to extract an advantage from their
> buyers.  By threatening to rescind, for example, they
> might attempt to impede, delay, or abort a sale or to
> exact tribute from a buyer who worries that the original
> creditor, if not paid, may demand payment at a later
> date, a possibility that might cause the buyer's banker
> to withdraw his loan commitment.  If the cutoff for
> rescission occurs upon the contract to sell, however,
> these possibilities will be eliminated and all buyers
> will know exactly what they are facing.

The two reports cited in *Beach* and the report cited in *Bitton*

15

addressed the clouds on title that could arise from the lack of a
fixed time for exercising the right of rescission, and on the
harm that such clouds on title cause borrowers in the long run.[6]
For reasons discussed already, the Court in *Beach* was reasonable
in construing the reports it cited as addressing the cloud on
titles arising from foreclosure sales.  The reports make no
mention that permitting rescission after a sale contract is
entered into could potentially inhibit sale transactions.
Accordingly, *Bitton* reads too much into the reports.  Its
speculations regarding Congressional intent do not seem well
founded: TILA does not vest the borrower with a right, based on
having timely exercised a right of rescission, to refuse to
perform on a subsequently executed contract of sale.  Advising
the buyer of the TILA right of rescission regarding the existing
lien is no different than telling the buyer of some other event
that does not alter the buyer's right to enforce the sales
contract.

Even if the execution of a contract of sale should be
treated as the point at which the right of rescission is lost,

---

[6]  For example, the report of the National Commission on
Consumer Finance, Consumer Credit in the United States 189-190
(Dec. 1972) stated:

> [T]he rescission period runs indefinitely unless
> required disclosures have been made and notice of
> rescission provided.  This clouds the titles to many
> residential properties and injures consumers in the
> long run.

what is lost at that point is the right to exercise the right of rescission, not the entitlements arising from a prior exercise of the right of rescission.  Nothing in the report *Bitton* cites, or in the two reports cited in *Beach,* suggests, as was held in *Meyer*, that once rescission is timely exercised the rights arising from rescission are nevertheless deemed lost if the property is later sold.  If the lender sells the property at foreclosure, it has only itself to blame for subjecting the property to a depressed sales price based on the cloud on title arising from the exercised right of rescission.[7]  If the borrower sells the property voluntarily, there will be no cloud on title based on the exercised right of rescission: rescission as between the lender and the borrower will have no impact on the purchaser whose rights under the contract are unaltered by TILA and whose title received pursuant to a completion of the sale will suffer no cloud based on continued existence of the right of rescission.

Treating a sale as terminating the borrower's entitlements arising from a timely exercised right of rescission will deprive the debtor of one avenue for raising funds with which to comply with his tender obligation upon rescission being effected in order to preserve his entitlement, arising from rescission, to a

---

[7]  When a borrower gives notice of the exercise of a right of rescission when there is uncertainty whether the right to rescind existed, the lender can protect itself by not foreclosing until it obtains a declaratory judgment that no rescission right existed.

17

return of his downpayment.  Congress did not likely intend that
result.

III

RELIEVING DAWSON OF HER RESCISSION ELECTION

The court had required Dawson to elect to proceed by way of
either rescission or a monetary judgment to recover finance
charges and fees paid, lest she obtain a double recovery.  Dawson
elected to proceed by way of rescission with respect to the
recovery of finance charges and fees, but that was prior to
Thomas making the assertion that the property's sale terminated
the right of rescission.  The court will not hold Dawson to her
election given the uncertainty in the case law as to whether
rescission is still available.  In addition to recovery of
finance charges and fees via rescission under § 1635(b), Dawson
is entitled alternatively under 15 U.S.C. § 1640(a)(4) to a money
judgment for recovery of all finance charges and fees paid.  The
court can frame its judgment as permitting Dawson to recover such
amounts via rescission, and, in the alternative, should the
court's ruling be reversed on appeal as to the rescission issue,
or if the rescission remedy proves less effectual, to recover
such amounts via a monetary judgment, subject, however, to the
limitation that only one recovery may be had.

18

IV

AMOUNT OF FINANCE CHARGES

The court already determined the amount of finance charges
and fees paid prior to the commencement of this adversary
proceeding as equaling $14,500.84. Because Thomas was paid an
additional sum out of the proceeds of the sale of the property,
it will be necessary to fix the amount of finance charges and
fees paid incident to that sale. The record does not permit the
court to fix the amount of finance charges and fees paid incident
to the sale.[8] Dawson's Motion to Compel has sought, in effect,
to supplement her complaint to seek recovery of such additional
finance charges and fees (as well as seeking an escrowing of the
$50,000 paid to Thomas). Thomas's opposition sets forth no good
grounds for barring Dawson from supplementing her complaint: he
remains free to raise as a defense to a supplemental complaint
the defenses he has raised to the motion. Accordingly, Dawson
will be permitted to file a supplemental complaint within 14 days
after entry of this decision; Thomas will be given 14 days to
respond; and a scheduling conference will be held on November 2,

---

[8] Because the loan was an interest only loan, it may be
speculated that the principal that remained owing when the
property was sold was $35,000.00 (the original principal amount
of the loan); that $35,000.00 of principal was paid out of the
$50,000.00 that Thomas received on the sale; and that $15,000.00
represents finance charges and interest owed and paid out of the
$50,000.00. The parties, however, may take a different view, and
I decline to rule on the basis of speculation. Moreover, Dawson
ought to proceed by way of a supplemental complaint so that the
issues are properly framed.

19

2010, at 9:30 a.m.

At the scheduling conference, Dawson may request the court
to enter a final judgment under Fed. R. Civ. P. 54(b) awarding to
Dawson the finance charges and fees paid prior to the
commencement of this adversary proceeding, as well as attorney's
fees incurred through April 29, 2008, the issue next addressed.

V

ATTORNEY'S FEES

The court has determined that Dawson is entitled to recover
attorney's fees incurred in connection with this adversary
proceeding.  This court's order of April 9, 2008, directed Dawson
to file a statement of reasonable attorney's fees within 20 days,
and provided that Thomas was required to file an objection within
15 days thereafter.  In compliance with this court's order, on
April 29, 2008, Dawson filed a statement reflecting attorney's
fees in the amount of $17,393.16 and costs and expenses in the
amount of $1,106.00.  Thomas has not opposed the statement of
fees and costs.  Accordingly, after addressing at the scheduling
conference whether the judgment should be made a final judgment
under Rule 54(b), the court will enter a monetary judgment for
those amounts.

Although Thomas has not directly challenged Dawson's
statement of attorney's fees, his May 22, 2008 response to
Dawson's motion to compel asserts that this adversary proceeding
should be dismissed in its entirety based upon a settlement of

20

the dispute.   If Thomas seeks dismissal of this adversary proceeding based upon a settlement of all claims, however, he must file the appropriate motion seeking relief from the court. Having failed to do so, the merit of any request for dismissal is not properly before the court.

VI

An order follows.

[Signed and dated above.]

Copies to: All counsel and parties of record; Office of United States Trustee.